# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WISCONSIN

TOMMY L. BROWN,

    Petitioner,

    v.                                                         Case No. 06-C-0182

RICHARD SCHNEITER,

    Respondent.

## DECISION AND ORDER

    Petitioner Tommy L. Brown, an inmate in the Wisconsin correctional system, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on February 14, 2006. The petition states that the petitioner was convicted of conspiracy to solicit staff, lying, and enterprises and fraud in violation of provisions of the Department of Corrections Administrative Code. As a result of his convictions, the petitioner received eight days of adjustment segregation and 360 days of program segregation which resulted in an extension of his mandatory release date by 177 days.

    The petitioner challenges the decision of guilt which was entered on January 29, 2004. In his petition, the petitioner alleges the following grounds: 1) denial of material exculpatory evidence, 2) the elements "agree" and "overt action" were not met under Wis. Admin Code DOC § 303.26(2)(c), 3) the alleged false statement the petitioner made to Captain Murashi was not false, 4) the committee failed to find the element "knowledge" under Wis. Admin. Code DOC § 303.27 as required by Wis. Admin. Code DOC § 303.76(6)(b), 5) the term "engages" under Wis. Admin. Code DOC § 303.32(1) is ambiguous and unconstitutional and 6) Wis. Admin.

Code DOC § 303.32(1) did not apply to the petitioner's involvement with the Coalition Against Exploiting and Mistreating Prisoners and Prisoners' Families (CAEMPPF).

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. Venue is proper under 28 U.S.C. § 1391. The case was assigned according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72.1 (E.D. Wis.). The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73.1 (E.D. Wis.).

This court conducted a preliminary examination of the petition in accordance with Rule 4 of the Rules Governing § 2254 Cases. By order of May 10, 2006, this court determined that "it does not plainly appear from the 'face of the petition' that the petitioner is not entitled to relief." Thus, this court ordered the respondent, Warden Richard Schneiter of the Wisconsin Secure Program Facility, to answer the petition for a writ of habeas corpus. The respondent answered the petition. Subsequently, the parties briefed the petition for a writ of habeas corpus which is ready for disposition and will be addressed herein.

## AEDPA STANDARD

The habeas corpus statute was amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub.L. No. 104-132, 100 Stat. 1214 (1996), which provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This provision entitles federal courts acting within their jurisdiction to interpret the law independently, but requires them to refrain from "fine tuning" state court interpretations. Lindh v. Murphy, 96 F.3d 856, 870-877 (7th Cir. 1996), rev'd on other grounds, 521 U.S. 320 (1997). "Thus, although this court reviews the state court's legal conclusions and mixed questions of law and fact de novo, that review is 'tempered by AEDPA's deferential constraints.'" Hereford v. McCaughtry, 101 F.Supp.2d 742, 746 (E.D. Wis. 2000) (quoting Sanchez v. Gilmore, 189 F.3d 619, 623 [7th Cir. 1999]).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." Washington v. Smith, 219 F.3d 620, 628 (7th Cir. 2000) (quoting Williams v. Taylor, 120 S.Ct. 1495, 1519 [2000]). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> under the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

Washington, 219 F.3d at 628.

The court went on to explain that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court 'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" Id.

- 3 -

(quoting Williams, 120 S. Ct. at 1523). To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." Hennon v. Cooper, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." Hall v. Washington, 106 F.3d 742, 748-49 (7th Cir. 1997). In Morgan v. Krenke, the court explained that:

> [u]nreasonableness is judged by an objective standard and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565-66 (7th Cir. 2000) (quoting Williams, 120 S.Ct. at 1522). Therefore, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. Washington, 219 F.3d at 628.

## RELEVANT FACTUAL BACKGROUND

As recited by the Wisconsin Court of Appeals in its decision, the petitioner's conduct report included the following facts.

> Waupun corrections officers discovered a pamphlet on prison grounds in which an organization calling itself the Coalition Against Exploiting and Mistreating Prisoners and Prisoners' Families, or CAEMPPF, announced itself to be a prisoner advocacy group. Subsequent investigation revealed that CAEMPPF's address was registered to Brown's wife, Cindy Brown. Further investigation consisted of reviewing 76 taped telephone calls between Tommy and Cindy over a two-month period.
>
> The telephone calls between the Browns included detailed discussion about forming and maintaining CAEMPPF as an organization that would accept money from inmates. Topics of discussion included rules and bylaws, officers, a mission statement, tax status, membership forms, and solicitation of inmates. On one occasion, the following exchange occurred:
>
>> [Tommy:] Things will start blossoming and money will start coming in.

- 4 -

[Cindy:] It would be nice.

[Tommy:] Yup, and hopefully you will be able to take out whatever money there is for certain uses like your gas and other things [you are] using in your home to help fund or help run the place or the business, even the rent to some extent, cause the more money you can save and put aside, the better off it'll be.

In a subsequent conversation between Tommy, Cindy, and Tommy's brother Billy, the following was stated:

[Tommy:] As you know Billy, next year I plan on putting my case back into court. And hopefully in the next 2 or 3 months my wife will try to open me an account to start some type of collection of money to try to help me get a lawyer, so I can get out of here.

[Billy:] How much do you think it will cost?

[Tommy:] It's probably gonna be quite a bit, but it's gonna take a while for a lot of money to accumulate. We're gonna try and raise most of it ourselves through different things we're doing …. In a sense, we started somewhat of a business. O.K., it's not a business, but it's like a business and we put a lot of money into it. You know, to try and get it started. But now it's up and running -- then we're gonna try and generate some money – we're getting ready to make some gigantic financial strides ourselves – having faith and hope in this business of sorts.

A week after this conversation, Tommy instructed Cindy to prepare introductory material and applications and to mail the material out to inmates, including Tommy. They discussed whether Cindy or another would sign the name of CAEMPPF Vice President Debi Zindars on the material.

During questioning about the matter, Tommy conceded receiving the CAEMPPF introductory letter, signed with Zindars' name, but Tommy said he had no idea how Zindars got his name.

During their telephone calls, the Browns also expressed concerns about Waupun Correctional's water supply. Tommy believed he became ill from drinking prison water, and Cindy took a sample of it for testing, with negative results. Tommy apparently believed that Waupun Correctional's water came from two different sources, and the following dialog occurred as a result.

- 5 -

> [Tommy:] I wonder if they're willing, through us, to proposition someone who has the ability to provide them what they need. Cause if so, I might know, well I don't know the individual, but a friend of mine knows the individual. They're pretty close and the individual could be persuaded that way.
>
> [Cindy:] They need it in the containers like I talked about.
>
> [Tommy:] Ya, I know that. Because of that individual's situation, and the individual could do that, because he's part of, you know and they are allowed to bring in gear.
>
> [Cindy:] She'll be getting back to me.
>
> [Tommy:] Cause if she mentions financial propositions to throw at the individual ya know, he may find, because of the low risk and Christmas is right around the corner and he may need the extra cash. He may not go for it, but it won't hurt to put it out there, cause he does do certain sneaky things.
>
> The conduct report refers to the above dialog as "a clear reference by Cindy and Tommy Brown to solicit an unnamed staff member by offering a bribe or gratuity."

(Answer, Exh. 11 at 2-4).

Based on that interpretation of the conversation, and the corrections officer's belief that the earlier conversations showed an intent to run CAEMPPF as a business, the conduct report charged the petitioner with conspiracy to solicit staff under Wis. Admin. Code DOC § 303.26C; lying under Wis. Admin. Code DOC § 303.27; enterprises and fraud under Wis. Admin. Code DOC § 303.32; and counterfeiting and forgery under Wis. Admin. Code DOC § 303.41.

The petitioner was given a copy of the conduct report and the Notice of Major Disciplinary Hearing Rights and Waiver of Time form on January 14, 2004. At a hearing held on January 29, 2004, the petitioner was found guilty of violating Wis. Admin. Code DOC § 303.26C, Soliciting Staff–Conspiracy, Wis. Admin. Code DOC § 303.27, Lying, Wis. Admin. Code DOC § 303.32, Enterprises and Fraud, and not guilty of violating Wis. Admin. Code DOC § 303.41,

Counterfeiting and Forgery. The adjustment committee imposed a penalty of eight days of adjustment segregation and 360 days of program segregation. On March 4, 2004, the petitioner received a copy of the adjustment committee's decision. On March 8, 2004, the petitioner appealed the findings of guilt and the penalty to the warden. On April 19, 2004, the warden affirmed the findings of guilty and the penalty imposed by the adjustment committee.

On May 6, 2004, the petitioner filed an inmate complaint in which he sought review of the findings of guilt. The Inmate Complaint Examiner (ICE) recommended dismissal of the complaint and the complaint was dismissed on June 15, 2004. On June 21, 2004, the petitioner requested review of the inmate complaint by the Corrections Complaint Examiner (CCE). The CCE recommended that the complaint be remanded to the adjustment committee for completion to indicate that "other testimony" was considered and to indicate which of the petitioner's questions were submitted to and answered by Captain Muraski. The CCE's recommendation was accepted by the Secretary's designee in a decision dated July 30, 2004. On August 19, 2004, the adjustment committee made the corrections recommended by the CCE and directed by the Secretary's designee.

The petitioner filed a petition for a writ of certiorari in the Dane County Circuit Court on August 30, 2004. The petitioner sought reversal of the actions of the adjustment committee. The petitioner asserted that his due process right under Wis. Admin. Code DOC § 303.76(1)(e)(1) to present exculpatory evidence was violated. He further asserted that he was not guilty of soliciting staff under Wis. Admin. Code DOC § 303.26(1), he was not guilty of lying under Wis. Admin. Code DOC § 303.27, and he was not guilty of enterprises and fraud under Wis. Admin. Code DOC § 303.32(1).

The Wisconsin Court of Appeals affirmed the circuit court's denial of the petitioner's petition for a writ of certiorari. The petitioner filed a petition for review with the Wisconsin Supreme Court which was denied on January 20, 2006. The petitioner then filed the present action.

## **ANALYSIS**

The Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property without due process of law. . . ." Although prisoners maintain due process rights, "in order to serve correctional goals and maintain institutional safety, prison officials must necessarily restrict the liberty of the prisoners they house." Scruggs v. Jordan, 485 F.3d 934, 938 (7th Cir. 2007).

Due process requires that prisoners in disciplinary proceedings be given advance written notice of the charges, an opportunity to be heard before an impartial decision maker, limited opportunity to call witnesses and present documentary evidence, a written statement articulating the reasons for the disciplinary action and the evidence justifying it, and "some evidence in the record" to support the finding of guilt. Wolff v. McDonnell, 418 U.S. 539 (1974), Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985). "Inmates have a due process right to call witnesses at their disciplinary hearing when doing so would be consistent with safety and correctional goals, but there is no right to call witnesses whose testimony would be irrelevant, repetitive or unnecessary." Piggie v. Cotton, 344 F.3d 674, 678 (7th Cir. 2003) (internal citations omitted).

Procedural due process also requires prison disciplinary officials to disclose material exculpatory evidence to the charged offender unless such disclosure would unduly threaten

- 8 -

institutional concerns. Scruggs, 485 F.3d at 939 (citing Piggie, 344 F.3d at 678). The function of this rule "in prison disciplinary proceedings, as in criminal cases, is twofold: to insure that the disciplinary board considers all of the evidence relevant to guilt or innocence and to enable the prisoner to present his or her best defense." Piggie, 344 F.3d at 678.

The petitioner asserts that he was denied the right to present material exculpatory evidence in the form of recorded telephone conversations with his wife at his disciplinary hearing. The petitioner maintains that he requested transcripts or tapes of the telephone conversations with his wife to establish that his wife disagreed with the suggestion to solicit staff, thereby defeating the conspiracy to solicit charge. The petitioner asserts that at the hearing Captain Muraski declared that he listened to the tapes of the telephone conversations and the petitioner's wife never indicated that she would need a court order for the water sample. The petitioner further asserts that Captain Muraski also testified that he could not recall the petitioner's wife ever stating during the telephone calls that she would not become involved in soliciting or criminal activity. Because Captain Muraski's testimony contradicts the petitioner's declaration, the petitioner contends that the recorded telephone conversations are potentially exculpatory evidence and requests the court to conduct an in camera review of the conversations.

In concluding that the petitioner was not denied exculpatory evidence, the Wisconsin Court of Appeals held that "although [the petitioner] had a due process right to present evidence at the hearing in his own defense, see Wolff v. McDonnell, 418 U.S. 539, 566 (1974), there is no authority for the proposition that his right extended to compelling production of transcripts." (Answer, Exh. 11 at 5-6). The court concluded that the petitioner "had the opportunity to testify

- 9 -

concerning the taped conversations, and to present his wife's version of those conversations." (Answer, Exh. 11 at 5).

Although the petitioner presented affidavits from his wife, they did not include averments with respect to her version of the telephone conversations regarding obtaining a water sample. The declaration of the petitioner's wife dated February 4, 2004, states: "During the 11-12-03 phone conversation with Tommy, I clearly told Tommy that if Colleen Henry wanted a water sample from WCI that they would have to get a warrant. This is the position I took, a position contrary to the 'conspiracy' charge. Tommy agreed and the subject was dropped." (Petition for a Writ of Habeas Corpus [Petition], Exh. A1).

The petitioner does not provide an explanation as to why he did not introduce a declaration from his wife with regard to the telephone conversations at his disciplinary hearing. Moreover, although the recording of the second telephone conversation was not given to the petitioner, he and his wife, as participants of the conversation, were aware of its contents. Thus, contrary to the petitioner's assertion, the court need not conduct an in camera review of the recordings pursuant to Campbell v. Henman, 931 F.2d 1212 (7th Cir. 1991).

In Campbell, the petitioners sought habeas corpus relief alleging that they were denied their right to due process because prison official withheld exculpatory information during prison disciplinary proceedings. The petitioners requested, but did not receive, reports documenting interviews with prison correctional and medical personnel and over 20 inmates regarding the incident which formed the basis of the disciplinary proceedings, the murder of an inmate. The court found that "[m]inimum due process requires that the district court conduct an *in camera* review of the entire investigatory file (not only the material relied on to find guilt) to determine whether or not exculpatory information existed." Id. at 1215. Unlike the petitioner in this case,

- 10 -

the petitioners in Campbell did not know what information the investigatory file contained or whether such information was exculpatory. The issue in this case is not the disclosure of the telephone conversation, but whether the petitioner was entitled to a recording or transcript of the conversation.

In addition to Campbell, the petitioner also relies on Piggie v. Cotton, 344 F.3d 674 (7th Cir. 2003). The petitioner in Piggie was denied the right to view a videotape of a cell extraction which was viewed by the disciplinary committee. The court noted that although the disciplinary committee's written decision indicated that it had reviewed the videotape, it did not state what, if anything, the videotape had revealed. Thus, the court concluded that "[w]ithout some idea of what is on the tape, we cannot evaluate the merits of Piggie's claim that his defense was hampered by not being given access to it." Id.

In this case, the telephone conversation was not presented at the hearing as evidence and the disciplinary committee neither listened to the tape nor reviewed a transcript of it. Rather, the committee relied on the testimony of Captain Muraski as to the contents of the telephone conversation. The petitioner had an opportunity at the hearing to testify as to his version of the telephone conversation and also to present an affidavit from his wife. Moreover, unlike the instant case, the petitioner in Piggie did not know what the videotape of the cell extraction revealed, nor did he or the district court or the appellate court know whether it contained exculpatory evidence.

Finally, unlike in either Campbell or Piggie, the Antiterrorism and Effective Death Penalty Act is applicable to this case.[1] As noted, to obtain habeas relief under the AEDPA, the

---

[1] AEDPA was not applicable in Campbell as that case was decided before the enactment of AEDPA. Additionally, 28 U.S.C. § 2254(d) did not affect collateral review of the decision in Piggie because Indiana does not make a judicial process available. See White v. Indiana Parole Bd,, 266 F.3d 759, 766 (7th Cir. 2001).

petitioner must show that his disciplinary hearing "resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." The petitioner cites no Supreme Court case which establishes a due process right to the production of either the recording or transcript of the telephone conversation with his wife. Although the court of appeals for this circuit has held that the rule of Brady v. Maryland, 373 U.S. 83 (1963), requiring the disclosure of material exculpatory evidence, applies to prison disciplinary proceedings, it is an extension of Supreme Court law. See Gaither v. Anderson, 236 F.3d 817, 820 (7th Cir. 2000). "[N]o Supreme Court case has made a similar extension." Id. Since the Supreme Court has not extended Brady to the prison disciplinary context, the petitioner cannot obtain relief on this ground. Accordingly, the Wisconsin courts' conclusion that the petitioner was not denied exculpatory evidence was not contrary to, or an unreasonable application of, Supreme court law.

In addition to the procedural safeguards, the disciplinary decision must be supported by "some evidence." Hill, 472 U.S. at 455. To determine whether due process is satisfied, the court does not assess the credibility of the witnesses or weigh evidence. Id. at 472 U.S. at 455. The only relevant question is whether there is any evidence in the record that could support the conclusion reached. Id. Due process is satisfied so long as "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." Id. at 455. Thus, Hill's standard is "less exacting than the preponderance of the evidence standard, requiring only that the decision not be arbitrary or without support in the record." McPherson v. McBride, 188 F.3d 784, 786 (7th Cir. 1999). The standard can be met by a disciplinary report alone. Id.

- 12 -

Pursuant to Wis. Admin. Code DOC § 303.26, inmates cannot offer anything to a staff member or request anything from a staff member. Section 303.05 (1) and (2) prohibit conspiracy to violate § 303.26:

> (1) If 2 or more inmates or others plan or agree to do acts which are prohibited under this chapter, all may be guilty of an offense.
> (2) An inmates (sic) who plans or agrees with individuals to do acts which are forbidden under this chapter is guilty of an offense.

With respect to the offense of conspiring to solicit staff, the petitioner asserts that there was insufficient evidence of an agreement or an overt action. Although the petitioner only briefly discusses this particular assertion and, therefore, did not fully develop it, the court will address it. In support of his assertion, the petitioner maintains that, as evidenced by the November 12, 2003, telephone call, his wife never agreed with his plan to obtain a water sample from a staff member of the prison.

The Wisconsin Court of Appeals concluded that "the evidence was sufficient to find Brown guilty of conspiring to solicit staff." (Answer, Exh. 11 at 6). Specifically, the court found: "The committee reasonably inferred from the relevant taped conversation that Brown conspired with his wife to bribe a staff member to obtain and remove a water sample from the prison." Id. The court held that unlike criminal conspiracy, the administrative rule did not require evidence of an overt act.

In deciding whether the disciplinary decision comports with due process, the court determines whether there is any evidence in the record that could support the conclusion reached. See Hill, 472 U.S. at 455. In this case, there is evidence in the record that could support the committee's conclusion that the petitioner and his wife conspired to obtain a water

- 13 -

sample from a member of the prison staff. The following conversation took place between the petitioner and his wife:

> [Tommy:] I wonder if they're willing, through us, to proposition someone who has the ability to provide them what they need. Cause if so, I might know, well I don't know the individual, but a friend of mine knows the individual. They're pretty close and the individual could be persuaded that way.
>
> [Cindy:] They need it in the containers like I talked about.
>
> [Tommy:] Ya, I know that. Because of that individual's situation, and the individual could do that, because he's part of, you know and they are allowed to bring in gear.
>
> [Cindy:] She'll be getting back to me.
>
> [Tommy:] Cause if she mentions financial propositions to throw at the individual ya know, he may find, because of the low risk and Christmas is right around the corner and he may need the extra cash. He may not go for it, but it won't hurt to put it out there, cause he does do certain sneaky things.

(Answer, Exh. 11 at 4).

Wis. Admin. Code DOC § 303.05 is violated if two or more inmates or others plan to do an act prohibited by chapter 303. Therefore, the telephone conversation supports the committee's decision that the petitioner had conspired with his wife to violate Wis. Admin. Code DOC § 303.26. Additionally, the petitioner failed to present an affidavit or declaration from his wife with regard to the contents of the subsequent telephone conversation. Accordingly, the court finds that the Wisconsin courts' determination that there was sufficient evidence in the conduct report to find the petitioner guilty of the offense of conspiring to solicit staff.

Wis. Admin. Code DOC § 303.27 provides in relevant part: "Any inmate who makes a false written or oral statement which may affect the integrity, safety or security of the institution

- 14 -

Case 2:06-cv-00182-PJG   Filed 10/20/08   Page 14 of 19   Document 22

is guilty of an offense." The conduct report stated the following concerning the violation of Wis. Admin. Code DOC § 303.27:

> On 12-19-03 when inmate Brown was interviewed, he was asked where he had obtained a CAEMPPF introduction letter with the signature of Debi Zindars on it, who was apparently the vice-president of CAEMPPF. He stated that he had received it in the mail and he had no idea how she got his name unless his wife gave it to her. The previous calls indicated or referenced in this report show that inmate Brown created this introduction letter and was informed by his wife that she was signing the name Debi Zindars. These actions place inmate Brown in violation of DOC 303.27 Lying.

(Answer, Exh. 2 at 10).

The Wisconsin Court of Appeals concluded: "Here, under any reasonable view of the evidence, Brown lied about his knowledge of the CAEMPPF letter. The committee could also reasonably find that the lie affected the integrity, safety, or security of the institution because it directly interfered with the institution's investigation into the matter." (Answer, Exh.11 at 6).

The disciplinary report alone can provide the evidence necessary to support the conclusion reached and, therefore, comport with due process. See McPherson, 188 F.3d at 786. In this case, the petitioner knew that his wife was the organizer of CAEMPPF and that he had drafted the by-laws of the organization. The petitioner had participated in the drafting and review of the introduction form. He directed his wife to send the introduction form to him and to other inmates. He and his wife had even discussed the signature on the introduction, noting that even though Debi Zindars writes backhand, the signature did not have to be written backhand.

The petitioner asserts, however, that Captain Muraski never asked how Ms. Zindars got his name, but only asked how she got his address. According to the petitioner, he responded that he had no idea, unless his wife gave it to her. Even if this was the question asked of the

- 15 -

petitioner, his answer, while technically not untruthful, was not entirely truthful. The petitioner knew that his wife had sent the letter and had signed Ms. Zindar's name. Moreover, the conduct report written by Captain Muraski indicates that he interviewed the petitioner and the petitioner "was asked where he had obtained a CAEMPPF introduction letter with the signature Debi Zindars on it, who was apparently the vice-president of CAEMPPF. He stated that he had received it in the mail and he had no idea how she got his name unless his wife gave it to her." (Answer, Exh. 2 at 10). The disciplinary report supports a finding that the petitioner stated he did not know how Debi Zindars got his name.

In this case, the disciplinary decision was supported by "some evidence" that the petitioner had violated Wis. Admin. Code DOC § 303.32. See Hill, 472 U.S. at 455. Accordingly, the court finds that the Wisconsin courts' determination that there was sufficient evidence in the conduct report to find the petitioner guilty of the offense of lying is not contrary to, or an unreasonable application of, Supreme Court law.

With respect to the Wis. Admin. Code DOC § 303.32, the Wisconsin Court of Appeals concluded that the evidence was sufficient "to find [the petitioner] guilty of enterprises and fraud." (Answer, Exh. 11 at 7). Specifically, the court concluded that "[t]he taped conversations revealed that [the petitioner] was directly and significantly involved in setting up CAEMPPF." Id.

The petitioner asserts that "[t]he Appendix to Wisconsin DoC (sic) Rule 303.32 indicates that this Rule has three purposes: (1) to prevent inmates who set up businesses from taking advantage of any member of the public; (2) to prevent any state liability upon contracts entered into by inmates; and (3) to prevent fraud upon the public by inmates who order items and do not pay." (Petitioner's Brief in Support of Petition for Writ of Habeas Corpus [Petitioner's Brief] at

12). The petitioner further asserts that the conduct report did not indicate that the petitioner's involvement with CAEMPPF violated any of the three purposes outlined in the Appendix.

Wis. Admin. Code DOC § 303.32(1) provides:

> (1) Any inmate who engages in a business or enterprise, whether or not for profit, or who sells anything except as specifically allowed under other sections is guilty of an offense, except for the following situation:
> (a) An inmate who was owner or part owner of any business or enterprise prior to sentencing may communicate with the inmate's manager or partner concerning the management of the enterprise or business.
> (b) An inmate may write and seek publication of works in accordance with these rules and institutional policies and procedures.

In the conduct report, Captain Muraski related the petitioner's conversations with his wife regarding CAEMPPF. The petitioner and his wife formed a corporation based upon by-laws that he drafted which were approved by an attorney hired by his wife. The petitioner and his wife discussed the introductory and membership forms, changes to be made to such forms, and the solicitation of other inmates to join the group. On November 29, 2003, the following telephone conversation occurred:

> (Tommy) "Things will start blossoming and money will start coming in" (Cindy) "It would be nice (Tommy) "Yup, and hopefully you will be able to take out whatever money there is for certain uses like your gas and other things your (sic) using in your home to help fund or help run the place or the business, even the rent to some extent, cause the more money you can save and put aside, the better off it'll be."

(Answer, Exh. 2 at 9). In a subsequent telephone conversation with his brother and his wife, the petitioner stated:

> In a sense, we started somewhat of a business. O.K. It's not a business, but it's like a business and we put a lot of money into it. You know, to try and get it started. But now it's up and running . . . then we're gonna try and generate some money . . . we're getting ready to make some gigantic financial strides ourselves . . . Having faith and hope in this business of sorts."

(Answer, Exh. 2 at 10).

- 17 -

Case 2:06-cv-00182-PJG   Filed 10/20/08   Page 17 of 19   Document 22

The conversations between the petitioner and his wife support a finding that CAEMPPF was not the petitioner's wife's non-profit organization, but a business established by both the petitioner and his wife. Moreover, although the evidence does not fall specifically within the three purposes stated in the note regarding Wis. Admin. Code DOC § 303.32, the disciplinary committee could reasonably find that the conduct of the petitioner violated the plain language of that section.

Thus, in this case, there was at least "some evidence" that the petitioner had violated Wis. Admin. Code DOC § 303.27. See Hill, 472 U.S. at 455. Accordingly, the Wisconsin courts' determination that there was sufficient evidence in the conduct report to find the petitioner guilty of the offense of enterprises and fraud is not contrary to, or an unreasonable application of, Supreme Court law.

Finally, the petitioner asserts that Wis. Admin. Code DOC § 303.32 is materially vague. Specifically, the petitioner asserts that the term "engages" is ambiguous because the word has more than one dictionary definition. The petitioner cites no authority for his assertion other than a general requirement of Wolff v. McDonnell, 418 U.S. 539 (1974) that the institution must provide an inmate with sufficient written notice of the charges.

The Wisconsin Court of Appeals concluded that the petitioner's assertion with regard to the term "engages" was without merit. The court stated: "'Engages' is not subject to misinterpretation. It plainly prohibits inmates from planning and forming a business or enterprise. There is no other reasonable meaning of the term under the circumstances in which it appears. If the ordinary rules of construction result in a practical or sensible meaning for the law in question, it is not unconstitutionally vague." (Answer, Exh. 11 at 7).

- 18 -

Case 2:06-cv-00182-PJG   Filed 10/20/08   Page 18 of 19   Document 22

The institution provided the petitioner with sufficient written notice of the charges. The court cannot find that the Wisconsin Court of Appeals conclusion that the term "engages" is not ambiguous is contrary to, or an unreasonable application of, Supreme Court law. Accordingly, the petitioner's petition for a writ of habeas corpus must be denied.

## **ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus be and hereby is **denied**.

**IT IS FURTHER ORDERED** that this action be and hereby is **dismissed**.

**IT IS ALSO ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 20th day of October, 2008.

BY THE COURT:

s/ Patricia J. Gorence

PATRICIA J. GORENCE
United States Magistrate Judge

P:\Transfer\PJG\Brown final dec.wpd        - 19 -        October 20, 2008

Case 2:06-cv-00182-PJG   Filed 10/20/08   Page 19 of 19   Document 22